IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KAREN J. REIMER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | 4:17CV3136<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiff Karen J. Reimer's ("Reimer") Motion for Order (Filing No. 26) requesting judicial review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Reimer's claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Reimer asks the Court to reverse the Commissioner's decision and remand for an award of benefits.[1] Urging affirmance (Filing No. 28), the Commissioner contends Reimer has not shown good cause to reverse and remand. With jurisdiction under 42 U.S.C. § 405(g), the Court affirms the denial of benefits because the Commissioner's decision is supported by substantial evidence in the record as a whole.

I.  **BACKGROUND**

Reimer, who previously worked as a legal assistant for approximately fifteen years, applied for disability benefits on April 26, 2014. Reimer reports a disability onset date of June 30, 2012. Born in 1952, Reimer primarily alleges she is disabled

---

[1]In her Complaint (Filing No. 1), Reimer requests a "trial on this matter" but neither provides any basis for this Court to hold a trial nor challenges the Commissioner's contention that the Court is without jurisdiction to do so. *See, e.g., Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994) ("It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo.")

because she suffers eye problems, including conjunctivitis, blepharitis, and meibomian gland dysfunction, which results in a "severe and chronic dry eye condition" that she says prevents her from working. She also reports some back pain resulting from a bulging disc. According to Reimer, her medical conditions and resulting pain prevent her from sitting at a computer and doing her work. Her disability claim was initially denied on August 18, 2014, and denied upon reconsideration on September 17, 2014.

At Reimer's request, an administrative law judge ("ALJ") for the Social Security Administration ("SSA") held a hearing on June 6, 2016, at which Reimer and Debra Determan, a vocational expert, both testified. Reimer testified she worked from home as a legal assistant for her husband's law office until she could no longer get the work done, even with accommodations. Her primary job was doing computer work, which "interferes with the blink rate" needed "to keep her eyes moistened" and caused "extreme pain and burning" in her eyes. Reimer stated she uses artificial tears six times per day despite some side effects and uses Restasis, a prescription anti-inflammatory medication, twice a day. According to Reimer, Restasis causes a severe reaction, but her treating optometrist, William Meyer, O.D. ("Dr. Meyer"), and others have told her she has no alternatives. Reimer testified her reaction to Restasis "is not nearly as bad as it was in 2011 and 2012."

Reimer said that in 2011 and 2012, she suffered pain of eight to ten on a ten-point scale twelve to eighteen hours per day and applied warm compresses for twenty minutes two to three times per day to relieve that pain. Reimer also stated that she tried to stay indoors to avoid the dry, dusty, moving air outside because it causes her tears to evaporate, increasing the pain and burning in her eyes. Reimer testified she would also lay down and close her eyes for fifteen to twenty minutes four to six times per day.

Reimer testified that as of 2016, her pain level had decreased to five or six on an average day unless she uses the computer for more than two hours or goes outside

2

for more than an hour, which causes her pain to increase to a seven or eight. She stated she can reduce her pain level by staying in the house where the environment is controlled and by proactively managing her symptoms. She applies eye compresses for ten to fifteen minutes one to two times per day. Reimer testified she can go out in the yard on nice days and do some gardening and participates in a Bible study group once a week for an hour to an hour and a half. She also goes out to dinner occasionally and shops for about an hour once or twice a week.

On July 13, 2016, the ALJ denied Reimer's benefits claim, finding she "is not disabled" under the Act. Reimer appealed the decision to the Appeals Council, which denied her request for review, making the ALJ's decision the final decision of the Commissioner. *See*, *e.g.*, *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). In denying Reimer's appeal, the Appeals Council noted Reimer had submitted a letter from Dr. Meyer dated October 19, 2016 ("Meyer letter"), that responded to some of the ALJ's analysis. The Appeals Council found the "evidence d[id] not show a reasonable probability that it would change the outcome of the decision." As such, it "did not consider and exhibit t[he] evidence."

On October 10, 2017, Reimer filed this action for judicial review of the Commissioner's unfavorable decision. She contends the Commissioner's final decision "is not in accordance with the law and is not supported by substantial evidence as required by 42 U.S.C. §405 (g)."

On March 11, 2018, Reimer moved (Filing No. 19) this Court for an order supplementing the administrative record with the Meyer letter. The Court denied (Filing No. 25) Reimer's motion, finding the Court was not authorized to "supplement" or add to the administrative record for review in this case and consider evidence not considered by the ALJ and the Appeals Council. Noting Reimer did not expressly request remand to the Appeals Council to expand the record, the Court

determined that to the extent Reimer did seek remand, she was not entitled to relief because the Meyer letter was not new and material evidence for purposes of § 405(g).

On April 23, 2018, Reimer moved "for an order reversing the Commissioner's decision and remanding the case for the calculation of benefits." On May 22, 2018, the Commissioner moved for an order affirming the denial of benefits. Those motions are now briefed and ready for decision.

## II. DISCUSSION

### A. Standard of Review

In reviewing the Commissioner's final decision under § 405(g), the Court must affirm if the "denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Court must "consider both evidence that supports and detracts from the ALJ's decision, but even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where substantial evidence on the record as a whole supports the ALJ's decision." *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004).

This Court does "'not reweigh the evidence presented to the ALJ,' and [must] defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) ("We defer heavily to the findings and conclusions of the Social Security Administration."). "If, after review, [the Court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ]'s findings, [the Court] must affirm the denial of benefits." *Wiese v. Astrue*, 552

4

F.3d 728, 730 (8th Cir. 2009) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

B. **Eligibility for Disability Benefits**

To be eligible for disability benefits, Reimer must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Reimer is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Commissioner uses a five-step evaluation to determine if a claimant is disabled." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. § 416.920(a)(4). That sequential process requires the ALJ to consider "(1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals [a listed impairment]; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). Steps Four and Five require the ALJ to assess the claimant's residual functioning capacity ("RFC"), *id.*, which is the most the claimant "can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1). The ALJ "must determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin*, 349 F.3d at 556.

Properly following the five-step process in this case, the ALJ determined Reimer "has not engaged in substantial gainful activity since June 30, 2012," and "has the following severe impairments: Meibomian gland dysfunction, conjunctivitis, dry eye syndrome, and degenerative disc disease of the lumbar spine." The ALJ concluded Reimer's impairments, though severe, did not meet or medically equal the severity of a listed impairment.

After carefully considering "the entire record," including Reimer's reported symptoms, the objective medical evidence, and opinion evidence, the ALJ determined Reimer "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with some limitations. The ALJ found Reimer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Reimer's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."

More precisely, the ALJ concluded the medical evidence failed to establish that Reimer's eye "pain and blurred vision are so severe or the process of managing symptoms so time consuming that they would prevent her from working." With respect to Reimer's testimony that her eye pain reaches ten on a ten-point scale, the ALJ noted Reimer neither sought immediate medical attention for that pain nor reported pain that severe to her medical providers. The ALJ likewise found "no medical evidence to corroborate [Reimer's] statements about the frequency with which she" must treat her eye problems—a frequency the ALJ found to be somewhat at odds with Reimer's other activities.

The ALJ gave "only little weight" to the opinions of Dr. Meyer despite his "long treatment history with" Reimer. The ALJ explained "the extreme limitations on visual acuity imposed by Dr. Meyer are inconsistent with the medical evidence of

record." The ALJ further explained Dr. Meyer's opinions received little weight because

> (1) some of Dr. Meyer's opinions relate to symptoms that are not mentioned in his treatment notes, such as eye pain and difficulties with odors;
>
> (2) some of Dr. Meyer's opinions could only have been based on the claimant's subjective complaints, such as those relating to the exacerbating effects of using the computer and driving, how long the claimant spends treating her eyes, her level of pain when waking up, and her ability to get a haircut;
>
> (3) although Dr. Meyer opined that the claimant's symptoms have not improved at all, his treatment notes mention improvement and the frequency of his visits with the claimant has reduced from every few months to once per year (4F; 12F);[2]
>
> (4) Dr. Meyer provided his opinion at the request of the claimant's representative and not as a result of the claimant seeking treatment (10F; 12F);
>
> (5) Dr. Meyer stated that there are no laboratory findings to support his opinions when he has in fact performed many tests of her vision and eye functioning (4F; 12F);
>
> (6) Dr. Meyer has not diagnosed the claimant with an impairment that could reasonably be expected to result in the extreme lifting limitations he described;
>
> (7) Dr. Meyer did not provide a rationale for the weight limitations on lifting he described;
>
> (8) the weight limitations Dr. Meyer imposed are inconsistent with the claimant's ability to drive and garden; and
>
> (9) to the extent Dr. Meyer opined that the claimant's "dry eye symptoms" are "disabling," his opinion relates to an issue reserved for the Commissioner of the Social Security Administration pursuant to 20 CFR 404.1527(d) and SSR 96-5p.

---

[2] The ALJ's decision includes references to medical records and other documents marked as exhibits in the administrative record.

The ALJ also noted Dr. Meyer's opinion was contrary to the opinion of Dr. Edward McGill, a specialist in the field of retinal diseases, who determined Reimer's vision was "not sufficiently affected to justify virectomy surgery" and that Reimer "functions reasonably well." The ALJ found Dr. McGill's opinion—which was based on the most-recent physical examination—more insightful and better aligned with the objective medical evidence.

Ultimately, the ALJ acknowledged Reimer "experiences significant discomfort from her eye condition and has to engage in remedial measures" but found no evidence her condition and those measures prevent her from working full time. "Given the lower levels of pain reported by the claimant at medical appointments as compared to the extreme levels alleged, the claimant's demonstrated visual acuity, and the opinion of Dr. McGill," the ALJ decided "the environmental limitations contained in the residual functional capacity adequately accommodate the claimant's visual impairments without further restrictions being necessary." With respect to Reimer's back pain, the ALJ concluded, Reimer's "impairment does not appear to have required any significant treatment or resulted in any significant loss of strength or range of motion" or affected Reimer's "ability to stand or walk."

Based on that analysis and the testimony of the vocational expert, the ALJ concluded Reimer "is capable of performing past relevant work as a legal assistant." Consequently, the ALJ determined Reimer is not disabled under the Act and is not eligible to receive disability benefits.

C. Issues on Review
 1. Controlling Weight

Reimer first argues "[t]he final decision of the Commissioner is erroneous as a matter of law and unsupported by substantial evidence in that it did not afford controlling weight or at least the greatest weight to the opinions, provided by the treating eye doctor, Dr. William C. Meyer, O.D., according to 20 C.F.R. §

404.1520c(c)(5)."[3] According to Reimer, Dr. Meyer's opinions were entitled to "the greatest weight based on his fifteen year relationship, his treatment relationship (as to the length of treatment, frequency of treatment and the nature of treatment), the supportability of his opinions and the consistency with the record as a whole."

"A treating source's opinion is not 'inherently entitled' to controlling weight." *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006)). An opinion from a treating source will generally receive controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Wiese*, 552 F.3d at 730-31 (citing 20 C.F.R. § 404.1527(d)(2)). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quoting *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014)).

If an ALJ does not give controlling weight to a treating physician's opinion, she considers a variety of factors in deciding how much weight to give, including the examining relationship, the treating relationship, supportability, consistency, specialization, and any other factors "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)-(6); *accord Wiese*, 552 F.3d at 731. In either case, the ALJ "must give good reasons for the weight apportioned." *Andrews*, 791 F.3d at 928.

---

[3]Although Reimer cites § 404.1520c in her Complaint, she relies on § 404.1527(c) in her brief. Section 404.1520c indicates the rules in § 404.1527 apply to evaluations of opinion evidence for claims filed before March 27, 2017. Reimer filed her application on May 1, 2014, so § 404.1527 applies.

In this case, Reimer contends the ALJ "simply failed to give any consideration to the opinion evidence provided by Dr. Meyer and provided no valid basis described under the regulations for not according any weight." In Reimer's view, "the ALJ summarily and substantially discounted all the medical opinion evidence and inappropriately substituted his opinion for the medical opinions." Reimer's arguments are unpersuasive.

Notwithstanding Reimer's assertions to the contrary, the ALJ expressly acknowledged Dr. Meyer's "long treatment history" with Reimer and appropriately considered his opinions regarding her pain and daily treatment but gave them less weight for "good reasons" routinely approved by the courts. *See*, *e.g.*, *Hacker*, 459 F.3d at 938. For example, the ALJ reasonably found some of Dr. Meyer's opinions were unsupported by and inconsistent with (1) the symptoms and diagnoses documented in his treatment notes, (2) other medical evidence in the record, and (3) Reimer's self-reported activities, including driving and gardening. More specifically, the ALJ noted Dr. Meyer's opinion that Reimer's symptoms had not improved at all was at odds with treatment notes showing improvement and the reduced frequency of her visits. An ALJ may discount a treating physician's opinions "where those opinions [are] internally inconsistent . . . and inconsistent with the claimant's own testimony." *Myers*, 721 F.3d at 525; *accord Hacker*, 459 F.3d at 937. The ALJ also properly discounted Dr. Meyer's opinions to the extent they depended on Reimer's subjective complaints rather than objective medical evidence. *See*, *e.g.*, *Cline*, 771 F.3d at 1104 (explaining a claimant's lack of credibility about the severity of her impairments and the resulting limitations undermined a treating physician's opinion that relied on the claimant's subjective complaints of pain).

Reimer contends "[t]he ALJ was clearly in error to fault the opinions of Dr. Meyer on the care and treatment she was receiving at his referral to Dr. McGill" because Dr. Meyer referred Reimer to Dr. McGill for a retinal consultation, not for her

dry-eye condition. But Dr. Meyer opined about Reimer's visual acuity and assessed severe limitations on her ability to lift and carry as a result of her vision problems. Even if Reimer is correct that Dr. McGill's "reference to her quality of vision was related to visual acuity and distortion as affected by the damage to her retina," the ALJ reasonably evaluated Dr. Meyer's opinion in relation to Dr. McGill's opinion that Reimer's vision was "not sufficiently affected to justify virectomy surgery" and that Reimer "functions reasonably well" at 20/30.

"It is the ALJ's duty to resolve conflicts in the evidence." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007). And this Court "defer[s] heavily to [his] findings and conclusions." *Hurd*, 621 F.3d at 738. The ALJ in this case "gave sufficient reasons to discount" Dr. Meyer's opinion, and the weight he gave "was supported by substantial evidence on the record as a whole." *Andrews*, 791 F.3d at 929.

### 2. Reimer's Subjective Complaints of Pain and Other Symptoms

Reimer next claims the ALJ "failed to make proper credibility findings as to the plaintiff's subjective complaints of eye pain and difficulties caused by the environment both inside and outside and the effects needed care and treatment for her problems according to [Social Security Ruling 16-3p ("SSR 16-3p")]."[4] As Reimer sees it, the ALJ's determination that she is not disabled "was not based on substantial evidence

---

[4] SSR 16-3p, which applies to cases decided after March 28, 2016, describes the process by which an ALJ should "evaluate the intensity, persistence, and limiting effects of an individual's symptoms in disability claims." *See* SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49462-63 (Oct. 25, 2017). To better align SSA policy with the regulatory language and "clarify that subjective symptom evaluation [under the applicable regulations] is not an examination of an individual's character," SSR 16-3p eliminated use of the term "credibility" and the requirement of a formal "credibility" finding. *Id.* at 49463. While the SSA's focus has shifted away from the claimant's "credibility," the underlying analysis is largely the same and remains consistent with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which "sets forth requirements for ALJs within the Eighth Circuit." *Randolph v. Barnhart*, 386 F.3d 835, 841 (8th Cir. 2004). SSR 16-3p still requires an ALJ to examine all the evidence and consider whether the claimant's alleged symptoms, including pain, are "consistent with the objective medical and other evidence" as required by 20 C.F.R. §§ 404.1529 and 416.929, which the Eighth Circuit has observed "largely mirror the *Polaski* factors." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

because it was not based on an RFC which incorporated all of the problems and limitations identified by [Reimer] in his [sic] testimony."

The evaluation of a claimant's subjective complaints of pain and other symptoms "is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003); *see also Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) ("[W]e will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility."). "If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the Court] will normally defer to that judgment." *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (quoting *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)).

In evaluating a claimant's subjective complaints, the ALJ must examine (1) "the claimant's daily activities"; (2) "the duration, frequency, and intensity of [her] pain"; (3) "precipitating and aggravating factors"; (4) "dosage, effectiveness, and side effects of medication"; and (5) any "functional restrictions." *Polaski*, 739 F.2d at 1322; *accord* 20 C.F.R. § 404.1529(c)(3). The ALJ also must consider the claimant's work history and "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints alleged." *Polaski*, 739 F.2d at 1322. "The ALJ 'must give full consideration to all of the evidence presented relating to subjective complaints' and is not free to discredit those complaints unless they are inconsistent with the evidence contained in the record as a whole." *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995) (quoting *Polaski*, 739 F.2d at 1322).

Reimer contends the ALJ misapplied the *Polaski* factors and failed to include in the RFC Reimer's "allegations of limitations caused by her dry eye pain or by her need to administer to them on a daily basis." Although "pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). "Allegations o[f] pain

are not accepted blindly and must be evaluated against other evidence." *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989). An ALJ may disbelieve or discount subjective "allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence." *Jones*, 86 F.3d at 826. That is what happened here.

After thoroughly examining the record, the ALJ concluded Reimer's impairments could reasonably cause the symptoms she reported, such as pain and blurred vision, but found her symptoms were not so severe and limiting as to render her disabled under the Act. Properly analyzing the *Polaski* factors, the ALJ concluded Reimer's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record," including Reimer's statements regarding her regular participation in other activities. *See*, *e.g.*, *Andrews*, 791 F.3d at 929. In particular, the ALJ found Reimer's treatment history and medical records did not corroborate her claims that (1) her pain reached the most-severe rating of ten on a ten-point scale two to three times per week, (2) her vision is so blurry that surgery is the only remedy, and (3) her eye problems require such frequent treatment that it substantially interferes with her daily activities.

The ALJ duly considered Reimer's subjective complaints of pain and limitations based on the entire administrative record but partially "discredited them for good cause because they were inconsistent with the evidence as a whole" and lacked sufficient evidentiary support. *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016). Because the ALJ gave valid reasons for the weight he gave to Reimer's complaints and his conclusions are consistent with and supported by substantial record evidence, the Court defers to the ALJ's well-founded decision. *See*, *e.g.*, *Hogan*, 239 F.3d at 962; *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("We will not disturb the

decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain.").

Reimer's argument that the ALJ did not properly incorporate her subjective allegations of pain and limitations in making his RFC determination is without merit. And any suggestion "that the ALJ should have weighed" the evidence "differently or drawn different conclusions do[es] not warrant relief under [the requisite] deferential standard of review." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("It is not the role of this court to reweigh the evidence presented to the ALJ.").

### 3. The Meyer Letter

Reimer's last issue relates to the Meyer letter. The Appeals Council received the letter but declined to "consider and exhibit" it, finding Reimer did "not show a reasonable probability that it would change the outcome of the decision." *See* 20 C.F.R. § 404.970(a)(5) (explaining the Appeals Council will review a decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision"). Reimer argues the Appeals Council misinterpreted the law and "failed to properly consider" the Meyer letter.

Although Reimer fails to mention it in her opening brief and statement of facts, on March 3, 2018, she moved this Court to "supplement" the record in this case and add the Meyer letter to the record on review. The Court denied the motion, concluding the Court did not have authority to grant Reimer's request. Noting Reimer had not asked the Court to remand this case to the Appeals Council to consider the Meyer letter, the Court decided that to the extent Reimer sought remand, the motion was denied because "the Meyer letter [wa]s not new and material evidence for purposes of § 405(g)" as interpreted by the Eighth Circuit. *See*, *e.g.*, *Krogmeier v. Barnhart*, 294 F.3d 1019, 1025 (8th Cir. 2002) ("Material evidence is 'non-cumulative, relevant, and

14

probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the [ALJ's] determination.'" (quoting *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993))).

Based on that decision, the Commissioner contends Reimer's "attempt to add this letter to the administrative record, contrary to this Court's earlier order, and to have the Court consider the letter in evaluating the ALJ's decision should be rejected as moot." Reimer disagrees. Sweeping past her prior refusal to address the Commissioner's arguments on this issue[5] and the Court's conclusion that the Meyer letter was not new and material evidence under § 405(g), Reimer states, "Because the issue was not before the Court nor argued by the plaintiff, the issue remains ripe for consideration and not moot as argued by the defendant." As Reimer sees it, she has now filed "a more proper motion for remand" and is "now asking" to have the Court "remand the case to the Appeals Council upon a finding that this evidence is new and material as required under 42 U.S.C. § 405(g)." Reimer's arguments again fall short.

The Commissioner's arguments about timeliness and finality are generally well-taken at this point given the nature of Reimer's motion to supplement the record and the Court's prior decision on this issue. And Reimer has not provided any compelling reason for her delay in addressing this issue or for the Court to reconsider and reverse its prior ruling. The Court has, nonetheless, considered Reimer's belated arguments for remand yet is still not persuaded the Meyer letter is new and material

---

[5]In resisting Reimer's Motion to Supplement the Record, the Commissioner noted Reimer "should have filed a Motion to Remand showing the evidence is new and material and there was good cause for the failure to incorporate such evidence into the record in a prior proceeding." The Commissioner primarily argued Reimer's failure to develop an argument for remand waived the issue but alternatively argued the Meyer letter did "not meet the new and material standard." In response, Reimer faulted the Commissioner for trying "to take the discussion to the substantive merits of the evidence," which was "not the purpose of" Reimer's motion to supplement. Instead, Reimer urged this Court to add the Meyer letter to the administrative record and consider it in reviewing the Commissioner's decision for substantial evidence.

15

evidence that presents a reasonable probability of changing the outcome of the ALJ's decision. *See id.*; 20 C.F.R. § 404.970; *Krogmeier*, 294 F.3d at 1025.

## III. CONCLUSION

Having carefully reviewed the record properly before the Court and the parties' submissions, the Court concludes substantial evidence supports the Commissioner's decision to deny Reimer disability benefits. Therefore,

IT IS ORDERED:
1. Reimer's Motion for Order (Filing No. 26) of reversal is denied.
2. The Commissioner's Motion to Affirm (Filing No. 28) is granted, and the Commissioner's decision is affirmed.
3. Reimer's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment consistent with this Memorandum and Order will follow.

Dated this 13th day of July 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge